IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL J. BUDDENHAGEN,

Petitioner,

v.

CASE NO.  15-3222-SAC-DJW

REX PRYOR, Warden, et al.,

Respondents.

## MEMORANDUM AND ORDER

Petitioner, a state inmate, filed this pro se petition for writ of habeas corpus under 28 U.S.C. § 2254.  The court denies the petition for the reasons that petitioner's grounds were not exhausted on direct or collateral appeal and were procedurally defaulted.  The court also notes that even if it reviewed petitioner's claims instead of dismissing them on procedural grounds, his allegations fail to state a claim for federal habeas corpus relief.

**Background**

In 2005, petitioner was convicted by a jury in Crawford County District Court in Pittsburg, Kansas, of manufacture of methamphetamine ("meth"), possession of meth with intent to sell, and possession of drug paraphernalia.  See *Buddenhagen v. State*, 2015 WL 249760, 340 P.3d 1236 (Jan. 2, 2015)(unpublished)(hereinafter "COLLAPP"), *review denied* (Kan.

Aug. 20, 2015).  The trial court imposed a 178-month sentence. On direct appeal, the Kansas Court of Appeals ("KCA") affirmed, and the Kansas Supreme Court ("KSC") denied review.  *Id.* at *1 (citing *State v. Buddenhagen*, 2006 WL 3877560, 149 P.3d 25 (Kan.App. Dec. 29, 2006), *review denied* (Kan. May 28, 2008)(hereinafter "DIRAPP").[1]

Petitioner filed a timely pro se state post-conviction motion under K.S.A. 60-1507 (hereinafter "60-1507 motion") in the trial court that was 41-pages long and a two-page "addition" a few months later.  COLLAPP at *1.  The motion was denied by the state district court, and Mr. Buddenhagen filed a timely collateral appeal.  On that appeal, the KCA described the 60-1507 motion as follows:

> In his lengthy motion and other associated pleadings, Buddenhagen raised myriad allegations.  An inventory of his various claims yields some 41 allegations of trial error, 14 allegations of ineffective assistance of trial counsel, and 20 allegations of ineffective assistance of appellate counsel.  Many of his claims are vague and conclusory and are often intertwined and repetitious.  He filed more than 300 pages of exhibits, consisting of excerpts from transcripts of a suppression hearing, the preliminary hearing, and the 3-day jury trial, as well as correspondence which he claims to have sent to his appellate counsel.

*Id.*  The state district court held a "preliminary hearing" on petitioner's motion.  The KCA described that hearing as follows:

---

[1]     The facts underlying petitioner's offenses were fully set out in the written opinions of the KCA on direct and collateral appeal and need not be repeated in full here.  The "controlling facts" were "not in dispute." COLLAPP at *1.

On December 22, 2011, a district judge who had not presided over Buddenhagen's trial convened a preliminary hearing to determine whether Buddenhagen had raised issues of substance which would warrant a full evidentiary hearing. Buddenhagen appeared at the hearing by telephone and his standby counsel appeared in person. The district court allowed Buddenhagen and his counsel to sequentially address the allegations raised in the 60-1507 motion; however, due to time constraints, the court was only able to resolve the first 15 of Buddenhagen's 41 allegations of trial error. The court ruled that none of these allegations entitled Buddenhagen to either a full hearing or habeas relief. The court found either that the issues were directly controverted by the record; the issues were raised and decided on the direct appeal; the issues were not raised by counsel as a matter of reasonable trial strategy; or that the issues could have been raised on direct appeal; and, Buddenhagen failed to show any exceptional circumstances warranting consideration in the 60-1507 proceeding. The preliminary hearing was adjourned, and for reasons not disclosed in the record, was not reconvened until January 7, 2013. Buddenhagen and his standby counsel (Mr. Fern) asked to resume sequential consideration of each of Buddenhagen's allegations. The district court denied that request, explaining that he had deferred ruling on the State's motion to dismiss "primarily to have an opportunity to allow [Buddenhagen] to present whatever [he] felt need[ed] to be added to anything that [he] didn't present in [his] original petition, which [the judge] read and considered." The district court found that no further argument or presentation of the issues was necessary and orally pronounced judgment denying the remaining allegations in Buddenhagen's 60-1507 motion: "With regard to those issues raised other than ineffective [assistance of] counsel I will sustain the [State's] motion at this time, not necessarily summarily ruling, but after hearing what points you have presented and considering the rest of the points presented in your brief, for those reasons and pursuant to case law as cited by the state." Buddenhagen also asked the district court to consider his allegations that the trial judge was biased. The district court had already rejected this claim at the first session of the preliminary hearing and again rejected the claim, ruling that

Buddenhagen's argument at this point was not "newly
related evidence." The district court directed the
State to prepare a journal entry incorporating its
rulings.

*Id.* at *1-2.   The KCA described the issues raised by Mr.

Buddenhagen on his collateral appeal as follows:

We are unable to easily determine precisely what issue
Buddenhagen presents for our consideration.  On page 1
of his appellate brief, he purports to raise two
general issues:

[1.] Did the district court commit error in
denying the motion for relief and failing to
find that the Appellant was denied his
constitutional right to a fair trial and due
process?  a. Was counsel ineffective because
of his failure to make proper objections to
certain statements and evidence?  b. Was
appellate counsel ineffective because of his
failure to argue any of the issues that
Movant had preserved for appeal in his
motion to suppress?

[2.] Did the district court err in failing
to grant to the Appellant a full evidentiary
hearing on all allegations in his petition
for relief and the amended petition?

However, after setting forth the facts of the case and
an introductory argument and citation of authority
regarding the standards of review, Buddenhagen
addresses and briefs only a single issue: Did the
district court err in failing to grant the appellant a
full evidentiary hearing on all allegations in his
petition for relief and the amended petition?  This is
the issue to which the State responds and which
Buddenhagen seems to be, albeit somewhat vaguely and
indirectly, addressing in the remainder of his brief.
This is, therefore, the question which we address.

*Id.* at *2-3.[2]  Both parties set forth in their appellate briefs

---

[2]     The State in its Brief of Appellee summarized petitioner's claims from

the following three options that a state district court may take in dealing with a 60-1507 motion:

> "First, it may determine that the motion, files, and records of the case conclusively show that the petitioner is entitled to no relief, in which case it will summarily deny the petitioner's motion.  Second, the court may determine from the motion, files, and record that a substantial issue or issues are presented, requiring a full evidentiary hearing with the presence of the petitioner.  Third, the court may determine that a potentially substantial issue or issues of fact are raised in the motion, supported by the files and record, and hold a preliminary hearing after appointment of counsel to determine whether in fact the issues in the motion are substantial."

*Lujan v. State*, 270 Kan. 163, 170-71, 14 P.3d 424 (2000); *Gaudina v. State*, 278 Kan. 103, 92 P.3d 574 (2004).  The KCA explained the approach taken by the lower court as follows:

The district court here exercised the second option of

---

paragraph 11 of his 60-1507 motion as follows: violation of due process, equal protection and right to fair trial in that prosecution fabricated and falsified evidence; prosecution produced perjured testimony; newly-discovered evidence of trial judge's bias; trial judge misconduct; prosecution/jury misconduct; withholding of exculpatory evidence; prosecution improperly commented on evidence not supported by record; prosecution improperly stated his opinion during closing as to strength of the case; prosecution improperly vouched for credibility of State's witness; selective prosecution; insufficient evidence to support conviction and failure to establish venue; defendant denied right to call witnesses to rebut State's case in chief; defendant denied effective assistance of trial and appellate counsel; illegal search and seizure; and cumulative errors.  *Buddenhagen v. State*, 2014 WL 3953547 at *5 (Kan.App.)(citing ROA, Vol. V, pp. 6-8).  The State had argued its Brief that the "only issue" before the KCA was "whether the district court erred in failing to grant a full evidentiary hearing."  The State reasoned that appellant specified two issues on appeal but "briefed only one issue;" an "issue not briefed on appeal is deemed waived or abandoned;" and a "point raised only incidentally in a brief but not argued there is deemed abandoned."  *Id.*  In addition, the State argued that "[a]llegations raising mere trial errors are properly raised in a direct appeal," and "not properly raised" in a 60-1507 motion "unless they affect constitutional rights and there is a showing of exceptional circumstances excusing the failure to appeal.  *Id.* at *12 (citing *Johnson v. State*, 271 Kan. 534, 535, 24 P.3d 92 (2001); Supreme Court Rule 183).

conducting a preliminary hearing with regard to
Buddenhagen's allegations of trial error.  In addition
to reviewing the motion, files, and records of the
case, the court considered evidence, oral argument,
and/or written briefs proffered by Buddenhagen and his
standby counsel.  The district court questioned
Buddenhagen and relied on his responses in making
factual findings on the record to support the
determination that Buddenhagen's claims of trial error
raised no substantial issues requiring a full
evidentiary hearing.

When a trial court makes findings of fact based on
evidence presented during a preliminary hearing, we
review only to assure that those findings are
supported by substantial competent evidence and are
sufficient to support the legal conclusion regarding
movant's right to 60-1507 relief.  The legal
conclusions are subject to de novo review.  *Bellamy v.
State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

To the extent that the district court more summarily
denied Buddenhagen's claims of ineffective assistance
of counsel based on the motion, files, and record, we
exercise de novo review regarding the legal conclusion
that no full evidentiary hearing is required.  See
*Edgar v. State*, 294 Kan. 828, 836, 283 P.3d 152
(2012); *Barr v. State*, 287 Kan. 190, 196, 196 P.3d 357
(2008).

*Id.* at *3.  The KCA affirmed the dismissal of petitioner's

claims that could have been but were not raised on direct

appeal.  In doing so, they relied upon Supreme Court Rule

183(c)(3) and its provisions that a "proceeding under K.S.A. 60-

1507 ordinarily may not be used as a substitute for direct

appeal involving mere trial errors" and that "trial errors

affecting constitutional rights may be raised even though the

error could have been raised on appeal, provided exceptional

circumstances excuse the failure to appeal."  *Id.* at *4.  The

KCA explained that exceptional circumstances might be shown under some conditions including ineffective assistance of counsel. *Id.* However, it then found the following in Buddenhagen's case:

> Buddenhagen fails to identify or explain, either in his pro se motion or on appeal, any unusual events, intervening changes in the law, or any other unforeseen change in circumstances which would support his claims. From his repeated recitation of trial errors in his motion and brief, it would appear that he is, indeed, seeking to use the 60-1507 proceeding as a substitute for a direct appeal involving mere trial errors or as a substitute for a second appeal.

> The district court, after hearing Buddenhagen and his standby counsel, and after reviewing the evidence and briefing submitted by and in behalf of Buddenhagen, ruled on each of the 41 allegations of trial error finding none sufficient to warrant 60-1507 relief. The district court's findings and conclusions were stated on the record and incorporated by reference into a subsequent written journal entry. On appeal, Buddenhagen fails to argue or show specifically where the trial court erred in its rulings, arguing only generally that the trial court failed to order a full evidentiary hearing on all issues raised in the 60-1507 motion. This lack of the requisite specificity certainly impedes our meaningful review.

> . . .Buddenhagen does not clearly suggest what would be accomplished by further evidentiary hearings.

> Similarly, the alleged failure to raise certain issues on appeal does not on its face establish a constitutionally defective performance by appellate counsel. Counsel raised and briefed several substantive issues. Other issues suggested by Buddenhagen either lacked support in the trial record, lacked legal substance, or were actually incorporated in the substance of the issues presented on appeal. Competent appellate counsel is allowed reasonable latitude in culling out nonexistent issues or issues with little or no probability of success and in

selecting and focusing on stronger issues which carry greater probability of favorable result.  Buddenhagen makes no suggestion here as to how inclusion of the marginal issues he wanted raised would have changed the appellate result.

When the substance of his K.S.A. 60-1507 motion is distilled, it becomes apparent that Buddenhagen is not actually complaining regarding his counsel's deficiencies so much as he is merely reiterating his objections to virtually every trial and/or appellate ruling against him.  This is an epitome of attempting to substitute the 60-1507 proceeding for a prohibited second appeal.

We find and conclude that the district court considered and correctly determined that Buddenhagen's allegations of trial error did not raise substantial issues which would entitle him to 60-1507 relief.  The district court further correctly determined that neither trial counsel nor appellate counsel were unconstitutionally ineffective.  The district court did not err in determining that no further evidentiary hearing was warranted on Buddenhagen's motion.

*Id.* at *4-5.

**Grounds**

Mr. Buddenhagen asserts 9 grounds for relief in his federal habeas corpus petition:

(1) trial counsel provided ineffective assistance;

(2) petitioner was denied a fair trial under the Fourteenth Amendment when Judge Wachter failed to recuse himself sua sponte due to bias from his life-long friendship with defendant's stepfather; (3) petitioner was denied his right to confrontation under the Sixth Amendment when the trial judge allowed the prosecution to use the preliminary hearing transcript as a

substitute for witness testimony at petitioner's suppression hearing;

(4) petitioner was denied his right to a fair trial under the by the admission into evidence of baggies of meth without adequate foundation or chain of custody;

(5) petitioner was denied a fair trial under the Fourteenth Amendment in that the jury pool was tainted during voir dire when the prosecution elicited information from a potential juror that she was a victim in a previous criminal matter involving defendant;

(6) petitioner's rights under the Fifth and Fourteenth Amendments were violated in that there was insufficient evidence to support his conviction of manufacture of controlled substance in Crawford County;

(7) petitioner was denied due process and equal protection under the Sixth Amendment because the State "selectively and maliciously" prosecuted him and not his passenger-girlfriend;

(8) public defender direct-appeal counsel provided ineffective assistance in violation of the Sixth Amendment in that counsel submitted issues on appeal that were without merit and abandoned "critical valid issues;" and

(9) petitioner was denied his right to compulsory process under the Sixth Amendment because defense witness Officer John Colyer was not served with a subpoena.

**Exhaustion**

In order to qualify for habeas corpus review in federal court, a state prisoner is required to demonstrate that he exhausted state court remedies on each of the 9 grounds raised in his federal petition.  28 U.S.C. § 2254(b)(1).  In his responses to questions on his form petition, petitioner admits that he did not raise any of his grounds on direct appeal.  With respect to his claim of ineffective assistance of trial counsel, petitioner adds in explanation but without authority, that this particular claim is not properly raised on direct appeal.  As to his other grounds, petitioner explains that his appellate counsel refused to raise these grounds on direct appeal and "abandoned issues."  He adds that he attempted to raise each of these grounds in a pro se supplemental brief that was rejected by the KCA.  Petitioner states in his form petition that he raised each of his 9 grounds in his pro se K.S.A. 60-1507 motion.  However, petitioner responds "no" when asked if he raised each ground on collateral appeal of the denial of his 60-1507 motion.[3]  He adds in explanation that while each ground was

_____

[3]     Petitioner's answers in his petition contain two discrepancies that the court disregards as errors.  As to Ground 6, petitioner marked "yes" when asked if he raised the issue on collateral appeal but then repeated his statement made throughout that he did not raise this issue "individually on its own merits" but it was "inclusive as to the District Court's failure to provide a full evid. hearing."  Petitioner marked that he raised Ground 8 on direct appeal but then repeated his statement that appellate counsel abandoned issues and the KCA denied his request to file a supplemental brief. Petitioner could not have raised his ineffective assistance of direct-appeal counsel as a ground in his direct-appeal brief since appellate counsel Kaul

not raised "on its own merits," it was "inclusive as to" the single ground raised on collateral appeal, which was that his conviction must be overturned because the state district court failed to provide a full evidentiary hearing before denying his 60-1507 motion.[4]

**Discussion**

The court makes the following findings and rulings based upon its review of the federal habeas corpus petition together with the state court records including the appeal briefs, transcripts of petitioner's post-conviction and criminal proceedings, and the state court opinions in petitioner's cases, as well as the Answer and Return[5] ("A&R") and the Traverse. The court finds that petitioner directly appealed his convictions, but his appointed counsel did not raise any of his federal-petition grounds on direct appeal.[6] This includes petitioner's

had just begun to represent him and continued to represent him throughout the ongoing direct appeal.

[4] Counsel Mills also prepared Appellant's Petition for Review on collateral appeal to the KSC. Mills specified the same two issues as were raised in the brief to the KCA: (1) the district court erred by denying Mr. Buddenhagen a fair trial and due process and (2) the district court erred in failing to grant a full evidentiary hearing on all allegations in his 60-1507 motion and amended motion. See *Buddenhagen v. State*, App.Case No. 13-110667-A, Appellant's Petition for Review (Filed Jan. 30, 2015). The Petition for Review is a condensed version of Appellant's Brief to the KCA.

[5] As petitioner points out, the A&R is confusing at times in that it appears to address claims as presented in petitioner's state post-conviction motion rather than in the federal petition before this court.

[6] The KCA described the claims raised on petitioner's direct appeal as follows:

allegations that his trial counsel Randel Messner was ineffective, which were not raised on direct appeal even though petitioner was represented by different counsel. The court concludes that petitioner did not exhaust any of his grounds on direct appeal. The court therefore rules that Mr. Buddenhagen can only show exhaustion if he properly presented all of his 9 grounds in his state collateral proceedings.

Petitioner filed a state post-conviction motion under K.S.A. 60-1507, which began proceedings that are often referred to as "collateral." The court accepts petitioner's allegation that he raised the 9 grounds listed in his federal petition among the morass of 75 claims that he apparently raised in his 60-1507 motion.[7] The problem for Mr. Buddehagen is that in order

---

In his direct appeal, Buddenhagen raised five issues: (1) denial of his motion to suppress evidence; (2) jury instructions regarding Buddenhagen's prior drug use; (3) failure to give a limiting instruction; (4) improper sentencing under the identical offense doctrine; and (5) use of his prior convictions in sentencing. This court found against Buddenhagen on each issue. 2006 WL 3877560, at * 2-7.

COLLAPP at *1. Appellate Defender Kory Kaul had listed these issues in Appellant's Brief: (1) trial court erred in denying motion to suppress result of "inventory search" of vehicle where police lacked cause to impound vehicle; (2) trial court erred with regard to instruction on prior crimes when allowed jury to consider Buddenhagen's prior drug use; (3) trial court erred in failing to give a limiting instruction where State introduced prior crime evidence; (4) error in classification of manufacture offense as severity level 1 drug offense; and (5) trial court increased sentence based on prior criminal history in violation of *Apprendi*. See *State v. Buddenhagen*, 2006 WL 1904248 (Kan.App.)(Appellant's Brief).

[7]     Like the KCA, this court found it difficult to distill petitioner's currently-asserted grounds and all supporting facts from among his numerous pro se claims, allegations and exhibits submitted in state court. This court is not obliged to parse petitioner's 60-1507 papers in search of showings that he should have made in his federal petition.

to have fully exhausted, he must have also presented each of his grounds as a federal constitutional issue through "one complete round" including state appellate court remedies.   This means that he must have also presented them on his collateral appeal to the KCA and ultimately to the Kansas Supreme Court.

The record reflects that petitioner raised only one claim on his collateral appeal.  And that claim is not even one of the grounds raised in his federal petition.[8]   Petitioner admits in his federal petition that his claim on collateral appeal was that the trial court denied his 60-1507 motion without conducting a full evidentiary hearing.   On petitioner's collateral appeal to the KCA, that court reasonably concluded from its review of the record and Mr. Buddenhagen's allegations that he argued the single ground that the trial court erred in deciding his 60-1507 motion without a full evidentiary hearing.[9]

---

[8]      Even if it were, a challenge to procedures used in state post-conviction proceedings is not grounds for federal habeas corpus relief.

[9]      The KCA relied on Buddenhagen's collateral-appeal brief, which was prepared by his appointed counsel Sarah Mills.  See Brief of Appellant, 2014 WL 1672777 (Kan.App.)(Appellate Brief).   Therein, counsel Mills specified the issues on collateral appeal as follows: (1) the district court committed error in denying the 60-1507 motion and failing to find that appellant was denied his constitutional right to a fair trial and due process and (2) district court erred in failing to grant to appellant a full evidentiary hearing on all allegations in his 60-1507 motion and his amended 60-1507 motion.   Counsel listed two subcategories under the first issue: (a) trial counsel was ineffective in that he failed to make proper objections to certain statements and evidence, and (b) appellate counsel was ineffective because he failed to argue any of the issues that movant had preserved for appeal in his motion to suppress.  Id. at *1.  Counsel Mills summarized Mr. Buddenhagen's pro se 60-1507 motion as "focused on issues relating to ineffective assistance of trial and appellate counsel" and also raising "numerous issues relating to violations of due process, equal protection,

Because petitioner has presented no clear and convincing evidence to the contrary, this court presumes that the state court's factual findings are correct. 28 U.S. § 2254(e)(1);

---

fair trial and other constitutional issues." *Id.* Counsel then listed the district court's "rulings as to the issues raised in Mr. Buddenhagen's 60-1507 motion, including that neither trial counsel nor appellate counsel was shown to have been ineffective. Collateral-appeal counsel then argued that while the district court heard evidence on some of petitioner's claims, it ended the hearing after two hours and the court restarted the hearing over a year later without explanation, heard no more evidence and never held a hearing on Buddenhagen's ineffective assistance of counsel claims. In arguing that petitioner was denied a proper hearing on his ineffective assistance of counsel claims, collateral-appeal counsel mentioned various issues that petitioner claims were mishandled by his counsel at trial and on direct appeal. *Id.* at *14. She specifically alleged the following with regard to Buddenhagen's direct-appeal counsel and his preparation of the appeal brief: he failed to "argue any of the issues that Buddenhagen had preserved for appeal relating to the lawfulness of the stop, search and seizure; Buddenhagen received only one letter from him; Buddenhagen sent "an extensive amount of research and case law to him; counsel failed to respond or attempt to reach out to Buddenhagen prior to filing the appellate brief; Buddenhagen was surprised to read the issues raised in the brief "as the two had never discussed a strategy for his appeal;" and direct-appeal counsel failed to raise any of trial counsel's errors. Collateral-appeal counsel noted Buddenhagen's belief that both trial and appellate counsel were ineffective and that he was denied the right to due process and a fair hearing. *Id.* at *10. Counsel pointed out that petitioner had also argued cumulative error in his 60-1507 petition. After mentioning several of petitioner's numerous claims, collateral-appeal counsel generally asserted that petitioner was denied a fair trial and concluded that all of Buddenhagen's claims "should have been reviewed by the district court through an evidentiary hearing." Counsel finally asserted that the district court's journal entry denying his 60-1507 motion did not comply with Supreme Court Rule 183 in that it did not specify findings of fact and conclusions of law but simply stated why relief was denied so that the decision violated Kansas case law and impeded appellate review. *Id.* at *15-*17. Counsel asked the KCA to remand the case for "additional and proper findings of fact and conclusions of law" or "for a real evidentiary hearing" because there are still numerous facts that are at issue" and "Mr. Buddenhagen should be given the chance to be heard on those issues."

The State "conceded" that the district court did not conduct a "full evidentiary hearing" and held a "preliminary hearing" instead. *Id.* at *11. The State alleged that Mr. Buddenhagen never claimed exceptional circumstances in his 60-1507 motion. The State also argued that there was no merit to each of petitioner's claims, asserting that most were vague and conclusory. *Id.* at *12-22. In discussing petitioner's claim of ineffective assistance of his direct-appeal counsel, the State acknowledged that Mr. Buddenhagen sent his counsel a "45 page letter asking to address ten issues." *Id.* at *22.

*Love v. Roberts*, 259 Fed. App'x 58, 62 (10th Cir. 2007).   This state-court ruling is supported by the record.

Petitioner argues that his failure to exhaust should be excused for at least two reasons.  First, he contends that he did everything in his power to exhaust all his claims on direct appeal and implies that circumstances beyond his control impeded his efforts.  He alleges that he asked his direct-appeal counsel to present his 9 federal-petition grounds and other issues suggested earlier by his trial counsel but he could not force either his appointed counsel to present or the KCA to review these additional claims on direct appeal.  The court rejects this argument based on established Supreme Court precedent holding that counsel representing a criminal defendant on direct appeal does not have a constitutional duty to raise every non-frivolous issue requested by the defendant.  *Jones v. Barnes*, 463 U.S. 745 (1983).  Under this controlling precedent, the "indigent defendant" does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Id.* at 751.  Appointed counsel is expected to raise only colorable claims and certainly has no obligation to raise frivolous claims.  And even as to non-frivolous claims, counsel may exercise his or her discretion as to the claims raised on appeal.  Petitioner has not alleged

15

or offered any evidence to suggest that direct-appeal counsel refused altogether to consider his additional issues or otherwise failed to exercise his professional judgment. Nor is it clear that any of these issues was colorable.

Second, Mr. Buddenhagen argues that he presented his claims on collateral appeal pro se after his direct-appeal counsel had filed a disappointing appellate brief. In support, he alleges that he sent a "letter/complaint" to the Clerk of the Appellate Courts in which he listed "issues that my counsel has failed to raise in my appeal." He has provided that letter as an exhibit more than once, most recently attached to his Traverse (Doc. 17) at page 10-15. He wrote of his concern that his direct-appeal counsel "failed to raise numerous valid and crucial issues" in his appellate brief. He listed 8 issues and asked the KCA "to enter an order directing counsel to file a supplemental brief addressing" those issues "or in the alternative" appoint new counsel or "allow appellant to file a pro se supplemental brief."[10]   *Id.* at 14.   Petitioner's exhibit of this letter reveals that, contrary to his allegations, he did not present all of the 9 grounds raised in his federal petition. Instead, his first three claims challenged admission of evidence, which

---

[10]     Petitioner alleges that the KCA denied his motion to remove Kaul as his counsel.   However, this court finds no such motion in the record and no motion that set forth grounds for removal of this counsel.

included petitioner's Ground (4) among others.  His next three claims challenged the vehicle search.  In his last two claims, he argued that the trial court erred in denying his motion for new trial and cumulative error.  In any event, a litigant who is represented by counsel has no constitutional right to file pro se supplements, and the KCA was not required to consider petitioner's pro se filing.  Based on the foregoing findings and rulings, the court holds that Mr. Buddenhagen did not fully exhaust state court remedies on any of the claims in his federal petition.

Because petitioner failed to show that he exhausted the grounds in his federal petition, and his claims would clearly be barred as untimely or successive if he attempted to exhaust them in state court now, the court finds anticipatory procedural default in this case.  The court finds additional procedural default because, to the extent that the state courts considered petitioner's claims in his 60-1507 motion, the state district court denied and the KCA dismissed those claims on collateral appeal based upon an independent and adequate state procedural rule, namely Ks.Sup.Ct. Rule 183(c).  This rule sets forth "procedure under K.S.A. 60-1507."  *Id.*  The state courts held that petitioner made no effort to follow the procedural rule by showing exceptional circumstances that would have allowed him to raise his claims on his state collateral appeal.  Petitioner

17

does not suggest any Supreme Court precedent that was violated by the KCA's decision.

The Tenth Circuit Court of Appeals recently explained the doctrine of procedural default in detail as follows:

> A state prisoner may not obtain federal habeas relief unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Four aspects of the exhaustion requirement are relevant to this appeal. First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). To do so, the prisoner must seek discretionary review on the constitutional issue he wishes to pursue under § 2254 in the state's highest court—here, the KSC...." *Id.* Second, "the prisoner must 'fairly present' his claim in each appropriate state court. . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004)(quotations omitted).... "[T]he crucial inquiry is whether the "substance" of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012)(quotations omitted). Third, procedural default may arise from anticipatory procedural bar. "Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies. However, "if the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Bland*, 459 F.3d at 1012 (citations omitted). Fourth, we do not "address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Cummings v. Sirmons*, 506 F.3d 1211, 1224

(10th Cir. 2007)(citation omitted).

*Griffin v. Scnurr*, 640 Fed. App'x 710, 716-17 (10th Cir. 2016),

*cert. denied*, (U.S. Oct. 3, 2016).  The Tenth Circuit recently

applied the default doctrine under circumstances similar to

those in the instant case:

> [u]nder the procedural default doctrine, we ordinarily
> won't review the merits of a claim the state court
> declined to consider based on a petitioner's failure
> to follow that state's procedural rules. *Martinez v.
> Ryan*, --- U.S. ----, 132 S.Ct. 1309, 1316, 182 L.Ed.2d
> 272 (2012).  As the state points out, Oklahoma has a
> procedural rule that deems waived all issues the
> petitioner could have raised on direct appeal but
> didn't raise.  Okla. Stat. Ann. tit. 22 § 1086.  And
> in affirming the state district court's denial of
> post-conviction relief, the OCCA invoked this rule
> generally to bar all claims McCormick failed to raise
> on direct appeal.

*McCormick v. Parker*, 821 F.3d 1240, 1245 (10th Cir. 2016); see

also *Johnson v. Patton*, 634 Fed. App'x 653, 663 (10th Cir. 2015);

*Cone v. Bell*, 556 U.S. 449, 465 (2009)("[C]onsistent with the

longstanding requirement that habeas petitioners must exhaust

available state remedies before seeking relief in federal court,

we have held that when a petitioner fails to raise his federal

claims in compliance with relevant state procedural rules, the

state court's refusal to adjudicate the claim ordinarily

qualifies as an independent and adequate state ground for

denying federal review.").  A federal habeas court cannot

address claims that were procedurally defaulted in state court

unless the petitioner demonstrates cause for the default and

actual prejudice as a result of the alleged violations of federal law, or demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 750, 722, 729 (Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999); *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007); *Hume v. McKune*, 176 F.Supp.2d 1134, 1140 (D.Kan. 2001).[11] Cause for a procedural default exists where "something external to the petitioner, something that cannot fairly be attributed to him[,] impeded [his] efforts to comply with the State's procedural rule." *Maples v. Thomas*, ___ U.S. ___, 132 S.Ct. 912, 922 (2012). "For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel" or that "some interference by officials" made "compliance impracticable, would constitute cause under this standard."

---

[11]     Respondents assert in the A&R that Kansas Supreme Court Rule 183(c)(3) is regularly followed and applied even-handedly, citing *Drach v. Bruce*, 281 Kan. 1058, 1080 (Kan. 2006). In his Traverse, petitioner makes no mention of procedural default or Supreme Court Rule 183(c). He alleges no facts suggesting that this rule is other than adequate, independent and applied even-handedly in the Kansas courts. Cf. *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998); *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir. 1999). The Tenth Circuit has expressly held that "the Kansas Supreme Court Rule 183(c)(3)(procedural bar rule) provided an independent and adequate basis not to reach the merits" of procedurally-defaulted claims. *Love v. Roberts,* 259 Fed. App'x  58, 60 (10th Cir. 2007); *Bowen v. Kansas*, 295 Fed. App'x 260, 264 (10th Cir. 2008).

*Coleman*, 501 U.S. at 753.   Under "certain circumstances counsel's "ineffectiveness in failing to properly to preserve" claims "for review in state court will suffice."   *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).   However, a claim of ineffective assistance must have been properly and fully presented to the state courts as an independent claim "before it may be used to establish cause for a procedural default."   *Id.*

As for the fundamental miscarriage of justice exception, the Supreme Court has held that "a convincing showing of actual innocence" can enable "habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims."   *McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924, 1928, (2013).   Thus, this exception applies in a "severely confined" category of cases: those "in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"   *Id.* at 1933 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Petitioner's allegation that his direct-appeal counsel did not present some of petitioner's claims in his brief on appeal does not demonstrate cause.   While counsel's ineffective assistance can serve as cause, petitioner has never established that his direct-appeal counsel was ineffective.   As will be discussed later this allegation fails to establish the deficient performance prong of the *Strickland* standard on a claim of

21

ineffective counsel for the same reasons.  Moreover, even if this exercise of professional judgment by direct-appeal counsel were held to amount to cause, petitioner alleges no facts whatsoever demonstrating prejudice.  He makes no effort to discuss the evidence at trial and does not show that proving his claims on direct appeal would have resulted in a different outcome.

Petitioner asserts discovery of "new evidence" only in connection with his claim of judicial bias.  The factual basis for this claim, that Judge Wachter and his stepfather were long-time friends, obviously existed long before and during trial.  Thus, this was not new evidence.  Furthermore, petitioner does demonstrate that had this claim been presented, it is more likely than not that the outcome of his appeal would have been different.  None of petitioner's claims suggest his actual innocence.

Respondents clearly and correctly asserted in the Answer and Return that petitioner procedurally defaulted his federal constitutional claims.  They also set forth the appropriate standards.  Thus, petitioner had the opportunity to respond to this defense in his Traverse.  He did not allege a single fact in that pleading to counter respondents' procedural default arguments.  He made no effort to argue cause for his procedural default or prejudice in light of the evidence on which he was

convicted at trial.  He baldly claimed fundamental miscarriage of justice, but alleged no facts establishing the elements of this exception.  Accordingly, the court finds that federal habeas corpus review of all of petitioner's grounds is barred because he procedurally defaulted his claims in state court.

Finally, the court comments that even if it somehow skirted the procedural default bar to consider petitioner's 9 grounds, it would deny relief for two main reasons.  First, Mr. Buddenhagen's presentation of many if not all of his grounds in his federal petition simply lacks adequate substance or factual content to show a federal constitutional violation.  As he did in state court, petitioner mainly presents a "laundry list" of bare claims and leaves it for the court to scour the record for the substance of each claim as well as any evidence and supporting facts.  Petitioner's arguments in his Traverse are nothing more than a rehash of his claims.  The state courts correctly characterized petitioner's many claims as mere trial errors that were resolved during his criminal proceedings. Petitioner alleges no facts in his federal petition that elevate his trial error claims to federal constitutional stature. Second, petitioner has not shown that the state district court decision denying his myriad claims in his 60-1507 motion and, much more significantly, the KCA decision affirming the lower court were contrary to or an unreasonable application of

established Supreme Court precedent. Under 28 U.S.C. § 2254(d)(2), this court is permitted to grant a federal habeas corpus writ "only if one of two circumstances is present:"

> (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

*Love v. Roberts*, 259 Fed. App'x 58, 62 (10th Cir. 2007).

The court discusses several examples below. As petitioner's ground (2) and in support of his ground (1) ineffective assistance of trial counsel claim, he asserts judicial bias. In support, he alleges that Judge Wachter and his stepfather Michael McNally were long-time friends, Wachter had represented McNally in a bitter divorce from Buddenhagen's mother, and finally that Judge Wachter made numerous prejudicial and "shocking" rulings in petitioner's criminal proceedings. Petitioner argued this claim in his 60-1507 preliminary hearing, and a different district court judge found no evidence in the record that Judge Wachter knew of any potential conflict at the time of trial, that no one pointed out the relationship to him, that being acquainted with a defendant's stepparent was not grounds to disqualify, and that no statutory reason was presented for the judge to recuse himself. *Buddenhagen v.*

24

*State*, Case No. 09cv38, Transcript of (60-1507) Proceedings (Dec. 22, 2011)(Vol. 3)(hereinafter "T-1507") at 41.  Petitioner still alleges no facts showing that Judge Wachter was aware of any significant conflict of interest and even states that he was unaware of this relationship until long after trial.  Since no motion to recuse was filed, the Judge did not refuse to recuse like petitioner suggests.  Petitioner points to no evidence of actual bias in the record suggesting that the judge bore "deep-seated" antagonism that precluded his fair judgment.  Petitioner's bald descriptions of rulings as shocking and controversial have no support in the record, and judicial rulings alone almost never constitute a valid basis for recusal. *Liteky v. U.S.*, 510 U.S. 540 (1994); see also *Fero v. Kerby*, 39 F.3d 1462, 1478-79 (10th Cir. 1994)(The "potential biasing influence" of the involvement of a friend's stepson in the criminal case was a matter of kinship only.).  As to petitioner's ground (3), he provides no information as to what witnesses he would have confronted or what questions and rebuttal evidence he would have presented.  In ground (4), petitioner claims that baggies were admitted as evidence in violation of rules of evidence but does not adequately discuss those rules and how they were violated.  Officer Howard testified at trial regarding the crucial evidence of a baggie of

meth that he saw in plain view at the scene.[12]   Numerous other baggies, one containing phosphorous and many empty, were found later by other officers during the search incident to arrest on scene and the impound search of the entire vehicle. Petitioner's objection focuses on Officer Howard's failure to personally mark the evidence collected at the scene.   Officer Howard testified that he collected the baggie containing meth and all evidence found at the scene, locked it in his patrol car, and thereafter turned it over to another named officer. *State v. Buddenhagen*, Case No. 05CR157, Transcript of Trial (Vol. 11)(hereinafter "TT") at 148.   Howard testified that he had not made his own markings on the meth baggie but nonetheless recognized it as the one he had taken from the vehicle.   TT at 145-46.   Petitioner's counsel objected to the admission of this evidence claiming lack of an adequate chain of custody and foundation.   Petitioner also focuses on the fact that the judge

---

[12]    Testimony at trial indicated that Officer Howard was on patrol in Pittsburg he pulled up behind Mr. Buddenhagen and his girlfriend sitting in a Ford Bronco that was blocking an alley near a bar.   Several people were standing around the driver-side window.   Officer Howard asked petitioner and his passenger to exit the vehicle and saw petitioner remove an object from his pocket that he placed on the console.   *State v. Buddenhagen*, Case No. 05CR157, Transcript of Trial (Vol. 11) at 137-143.   Officer Howard could see that the object placed on the console was a baggie of what appeared to be meth.   *Id.* at 144.   Officer Justice searched petitioner and the vehicle incident to petitioner's arrest and found a syringe and Sudafed tablets in his pockets and another baggie containing phosphorous in the console area. *Id.* at 172.   A subsequent search of the vehicle by other officers yielded evidence of the makings of a traveling meth lab.   As the state courts found, the evidence against Mr. Buddenhagen was overwhelming.   He has alleged no facts showing that had he proved any of the alleged trial errors the results of his state proceedings would have different.

did not immediately rule on his objection but took the matter under advisement overnight then the next day ruled that the evidence was admissible and went to the weight of the evidence. Petitioner from there speculates that the evidence was tampered with and even fabricated.  Petitioner presents no facts or argument indicating that the trial judge's evidentiary ruling amounted to a federal constitutional violation.  Petitioner's claim that the jury pool was tainted by a statement made during voir dire similarly fails to show a constitutional violation. This incident was argued in a motion for mistrial.  The state habeas judge found that the trial judge determined that the jury panel was not tainted but offered to give a cautionary instruction if requested by counsel and gave petitioner the opportunity to strike this person as a juror, which he did.  T-1507 at 49.  These claims seem to reflect petitioner's misunderstanding of the trial judge's rulings rather than any federal constitutional violation.  Petitioner also argued at his 60-1507 hearing that there was insufficient evidence to support his conviction of manufacture of controlled substance in Crawford County (Ground 6).  The state habeas court reasonably found that evidence gathered at the scene came from a location within Crawford County and included the testimony of people present at the scene so that the facts presented at trial to establish jurisdiction and guilt were supported "by both

physical evidence and oral testimony." *Id.* at 6.   The KCA affirmed the district court.   The trial record contains sufficient evidence of this offense (see footnote 12 herein). Petitioner claims that his equal protection rights were violated because his girlfriend/passenger was not prosecuted (Ground 7). However, he does not allege facts showing the essential elements of a selective prosecution claim.   This claim required a showing not only that the defendant was singled out for prosecution while others "who were similarly situated were not," but also that his selection was "deliberately based on an unjustifiable consideration," for example that persons of other races could have been prosecuted for the offenses but were not.   *U.S. v. Armstrong*, 517 U.S. 456, 469-70 (1996).   As Ground (9) and in support of his ineffective trial counsel claim (Ground 1), petitioner alleges that his rights were violated when Officer Colyer was not subpoenaed.   In support, he alleges that Colyer's testimony would have refuted the testimony of another officer and proved that detectives testified falsely, that the interview was recorded, and that recording was withheld.   This claim is vague and conclusory.   Petitioner does not allege basic supporting facts about the interview such as when it occurred, who participated, who withheld the recording, what content was exculpatory, or even which detectives falsely testified and what testimony they gave and Officer Colyer would have given.

28

The court separately discusses Mr. Buddenhagen's claims of ineffective assistance of counsel (Grounds 1 & 8). Petitioner claims that his trial counsel was ineffective for failing to do the following: (1) properly investigate the incident and follow up on possible defenses; (2) request a "credibility and weight" jury instruction; (3) impeach the State's witnesses that changed their testimony; (4) object to the court taking judicial notice of the preliminary hearing transcripts at the suppression hearing, which deprived petitioner of right to confrontation; (5) do a background check on his passenger/girlfriend and discover her prior arrest for manufacturing; (6) assure that Officer Colyer was summoned as a defense witness to testify that the arrest interview was recorded; (7) observe and report a sleeping juror; and (8) object during closing to prosecutor vouching for his "witnesses credibility." See Petition (Doc. 3) at 6. Not one of these underlying allegations is supported by a set of facts showing a federal constitutional violation. As noted, the court is not required to search the record for facts to support petitioner's bald claims. In determining whether trial or appellate counsel has rendered constitutionally effective assistance, courts apply some form of the Supreme Court's *Strickland* standard under which a petitioner must prove both (1) that appellate counsel's performance was objectively unreasonable and (2) that absent counsel's deficient performance

there was a reasonable probability that petitioner's appeal would have been successful. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). Generally, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id. at* 690. The state courts found that trial counsel's performance was adequate, and this finding is supported by the transcripts of the state criminal proceedings.

In ground (8), petitioner asserts that his direct-appeal counsel was constitutionally ineffective because he failed or refused to raise the claims suggested by petitioner on direct appeal. A criminal defendant has the right to effective assistance of counsel on the direct appeal of his conviction. See *Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000)(citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)); see also *Strickland*, 466 U.S at 690-91 (noting that appellate counsel's strategic choices with regard to which claims to bring on appeal are "virtually unchallengeable"). The Supreme Court has reasoned that "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being

evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones*, 463 U.S. at 751-52). Reviewing courts may not "second-guess" the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones*, 463 U.S. 745. Thus, even if petitioner fairly exhausted this ground, this court would reject it based on the foregoing legal authority and the same Supreme Court holding cited earlier that appellate counsel has no constitutional duty to raise every issue suggested by his client. The Tenth Circuit recently discussed the difficult standard for this type of claim as follows:

> [a]lthough "[a] claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal," we note that "it is difficult to show deficient performance under those circumstances because counsel 'need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.'" *Cargle*, 317 F.3d at 1202 (quoting *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)).

*Patton*, 634 Fed. App'x at 661.[13] The Appellant's Brief filed by counsel on petitioner's was a well-reasoned, 19-page pleading

---

[13]     The standard for finding ineffective assistance of counsel on federal habeas review is even more onerous. Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The *Strickland* standards and § 2254(d) "are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); see also *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013)("This double deference is doubly difficult for a petitioner to overcome, and it

that professionally argued five substantive issues that appellate defender counsel Kaul presumably deemed most likely to succeed. Furthermore, even assuming that counsel's failure to raise any of petitioner's federal-petition grounds was objectively unreasonable, petitioner has not shown that absent counsel's alleged deficient performance, there was a "reasonable probability" that his direct appeal would have been successful.

After finding procedural default, the KCA discussed petitioner's allegations of ineffective assistance of trial and direct-appeal counsel as they were presented in his 60-1507 motion and found that petitioner had not shown either deficient performance or prejudice. The KCA described the state district court's ruling on Buddenhagen's claims of ineffective counsel as follows:

> Turning to Buddenhagen's allegations of ineffective assistance of counsel, the court found that, based on reviews of "all of [trial counsel's] motions" as well as the portions of the transcripts Buddenhagen submitted in support of his 60-1507 motion, trial counsel "did not rise to the level of being ineffective with regard to statutory and case law standards." The district court then made essentially the same finding with regard to appellate counsel. The district judge emphasized the procedural discretion vested in counsel and further noted that "most all of the quote constitutional issues with regard to the trial, admission of evidence [had] been argued at least twice before the trial court and on

will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

appeal."

COLLAP at *2.  The KCA then made its own rulings on these claims as follows:

> Buddenhagen attempts to circumvent the "mere trial errors" rule by seeking to establish constitutionally ineffective assistance of trial and appellate counsel. He alleges that the district court failed to consider the totality of the circumstances—"the entire picture"—of what his counsel did or did not do.  In support of his claims that both trial and appellate counsel failed to properly handle his case, he again sets forth yet another laundry list of trial errors. Most of these allegations deal with the same allegations and subject matter which was considered and already ruled upon by the trial court and on prior appeal.  The record reveals that trial counsel did pose appropriate objections; that counsel did not object when such objections would have been without legal or factual support; that counsel properly cross-examined witnesses and explored evidentiary deficiencies; and that counsel made reasonable tactical decisions regarding the admission of evidence.

COLLAPP at *4.  The state courts clearly applied correct legal standards and reviewed the record before holding that trial and direct-appeal counsel performed adequately.  These factual findings of the KCA are supported by the transcripts of the state criminal proceedings.  Petitioner alleges no facts and makes no arguments in his federal petition showing that the KCA's decision as to either trial or direct-appeal counsel's performance was contrary to or an unreasonable application of *Strickland*.

For all the foregoing reasons, the court denies this

33

petition for writ of habeas corpus.

**Denial of Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473 (2000)(citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In addition, when the court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. The court concludes that a certificate of appealability should not issue in this case. Nothing suggests that the court's ruling resulting in the dismissal of this

action [e.g., as time barred] is debatable or incorrect.  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.  A certificate of appealability shall be denied.

**IT IS THEREFORE ORDERED** that this petition for habeas corpus is denied, and a certificate of appealability is denied.

**IT IS SO ORDERED.**

**Dated this 26th day of October, 2016, at Topeka, Kansas.**


**s/Sam A. Crow**
**U. S. Senior District Judge**